**FORSYTH COUNTY HOSPITAL AUTHORITY, INC. d/b/a Forsyth Memorial Hospital**

v.

**Otis R. BOWEN, M.D., Secretary of the Department of Health and Human Services.**

**No. C–87–132–WS.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

Dec. 11, 1987.

Anthony H. Brett, Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., Stephen M. Schuster, Jr., Samuelson, Portnow, Little & Schuster, P.C., Reston, Va., for plaintiff.

Robert H. Edmunds, Jr., U.S. Atty., and Harry L. Hobgood, Asst. U.S. Atty., Greensboro, N.C., and Gary A. Ratner, Asst. Regional Counsel, Dept. of HHS, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (September 10, 1987) and on Defendant's Cross–Motion for Summary Judgment (November 10, 1987), both pursuant to Rule 56 of the Federal Rules of Civil Procedure. The case involves a challenge to the decision of the Secretary to offset investment income accruing to a "related organization" under 42 C.F.R. § 405.427 (1982) against a health care provider's reimbursement of Medicare benefits under 42 U.S.C. § 1395cc, pursuant to 42 C.F.R. § 405.419 (1982).[1] Finding that both the "offset rule" and the "related organizations doctrine" authorize the imputing of investment income accruing to an entity over which a Medicare provider exercises extensive authority and control, the Court will deny plaintiff's motion and grant the Secretary's motion.

## FACTS

Plaintiff Forsyth County Hospital Authority, Inc. is a nonprofit corporation organized under the laws of North Carolina and operating as a general hospital. Forsyth

---

1. The "related organizations principle" (section 405.427) is now codified at 42 C.F.R. § 413.17 (1986). Similarly, the "offset rule" (section 405.- 419) is presently codified at 42 C.F.R. § 413.153 (1986).

Memorial Hospital Foundation, Inc. ["the Foundation"] is also a North Carolina non-profit corporation organized on August 20, 1981 for the purpose of "supporting and operating for the benefit of and to carry out the purposes of [plaintiff]. . . ." (Transcript of Administrative Proceeding at 483) (containing the Foundation's Articles of Incorporation). The parties agree that plaintiff is a "provider of health care services" under 42 U.S.C. § 1395h.

The Foundation's Articles of Incorporation further provide that plaintiff's Board of Trustees shall appoint six of the nine members of the Foundation's Board of Trustees. (*Id.* at 485). In addition, the Chairman of plaintiff's Board of Trustees and its President shall fill two of the three remaining positions. Moreover, the Articles also provide that any assets remaining upon the Foundation's dissolution and liquidation shall be distributed first to plaintiff. (*Id.* at 487). For these reasons, the parties have stipulated that plaintiff and the Foundation qualify as "related organizations" under 42 C.F.R. § 405.427 (1982). (*Id.* at 257).

On October 1, 1970, plaintiff purchased Hawthorne Apartments in Winston–Salem, North Carolina for approximately $700,-000.00. After using the property to recruit and house hospital employees, plaintiff donated the apartments without consideration on February 5, 1982 to the Foundation. On September 30, 1982, the Foundation sold the apartments to a third party for approximately $1,550,000.00. The Foundation used these proceeds to purchase a surgical supply firm as well as a free standing surgery center, and the remaining funds were invested in income bearing accounts.

At the end of its fiscal year on June 30, 1983, plaintiff sought reimbursement for Medicare expenses incurred from Blue Cross–Blue Shield of North Carolina, a fiscal intermediary appointed by the Secretary of Health and Human Services to assist in the administration of the Medicare program. *See* 42 U.S.C. § 1395h. After the intermediary offset the interest income from the proceeds of the sale against plaintiff's claimed interest expenses, the Provid-er Reimbursement Review Board reversed this determination on an appeal pursuant to 42 U.S.C. § 1395*oo* (a). On January 10, 1987, the Deputy Administrator of the Health Care Financing Administration reversed the Board's decision and reduced plaintiff's reimbursement by the amount of investment income. On March 6, 1987, plaintiff filed this action in United States District Court for the Middle District of North Carolina pursuant to 42 U.S.C. § 1395*oo* (f)(1), challenging the Secretary's refusal to fully reimburse its claimed expenses.

DISCUSSION

In 1974, Congress amended section 1878(f) of the Social Security Act to empower health care providers to obtain judicial review of final agency decisions involving the Medicare Act. *See* 42 U.S.C. § 1395*oo* (f)(1). Accordingly, a court may set aside agency actions, findings, and conclusions upon any of the following specific bases:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2) (incorporated by 42 U.S.C. § 1395*oo* (f)(1)). Moreover, an agency's interpretation of its own regulation generally carries controlling weight unless such a construction is "plainly erroneous or inconsistent with the regulation." *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965) (quoting *Bowles v. Seminole Rock and Sand Co.,* 325 U.S.

410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945)).

In order to uphold agency action, a reviewing court must make two specific findings. First, the court must conclude that the agency's interpretation of its regulation is consistent with both its language and intended purpose. *Northern Ind. Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of Am., Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 173, 46 L.Ed.2d 156, 159 (1975) (per curiam). Second, the court must find that the Secretary's construction comports with the statute under which the regulation is promulgated. *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48, 56 (1977). If the administrative record fails to support either of these findings, the reviewing court must set aside the agency action.

### I.

■ Along with section 1814(b) of the Social Security Act, section 102 of the Social Security Amendments of 1965 entitles qualified health care providers such as plaintiff to reimbursement for the "reasonable cost" of furnishing hospital services to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395cc, 1395f(b)(1). Moreover, section 1861(v)(1) of the Act defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." 42 U.S.C. § 1395x(v)(1)(A). In addition, the amount "shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types of classes of institutions, agencies, and services...." *Id.*

Pursuant to this authority, the Secretary has promulgated a regulation declaring: "Necessary and proper interest on both current and capital indebtedness is an allowable cost [under 42 U.S.C. § 1395cc]." 42 C.F.R. § 405.419(a) (1982). Moreover, "necessary" interest includes only that which has been (1) incurred on a loan made to satisfy a financial need of the provider,

(2) incurred on a loan made for a purpose reasonably related to patient care, and (3) reduced by investment income. 42 C.F.R. § 405.419(b)(2) (1982). Accordingly, "providers are reimbursed only for those costs which they *actually incur....*" *Cheshire Hosp. v. New Hampshire–Vermont Hospitalization Serv., Inc.,* 689 F.2d 1112, 1119 (1st Cir.1982) (emphasis added).

The decision to offset the investment income in this case against plaintiff's claimed interest expenses focused on prongs one and three above. In other words, the Deputy Administrator offset all of the investment income against plaintiff's allowable interest expense because (1) these expenses were incurred on loans plaintiff did not "need" since it had access to the Foundation's funds, and (2) in any event, the income from the invested proceeds of the sale of the apartments is imputable to plaintiff. Hence, plaintiff's claimed "cost" was not "actually incurred" under section 1861(v)(1) of the Act to the extent of plaintiff's access to the proceeds of the sale of the apartments. Accordingly, the Secretary properly reduced plaintiff's reimbursement to reflect this situation.

■ Many cases upholding offset have involved income accruing primarily to one besides the provider. For example, two such cases involved proceeds of a bond sale deposited in a Debt Service Reserve Fund [DSRF] in order to secure the bondholders. *See Cheshire Hosp.,* 689 F.2d 1112; *Sacred Heart Hosp. v. Heckler,* 601 F.Supp. 299 (E.D.Pa.1984), *aff'd,* 770 F.2d 1075 (3d Cir. 1985). In both cases, the court emphasized, "Since the interest earned on the DSRF will ultimately benefit [the provider], we do not believe it is unreasonable to treat such interest as investment income of the hospital." *Cheshire Hosp.,* 689 F.2d at 1118, *quoted in Sacred Heart,* 601 F.Supp. at 301. In other words, "the funds in the DSRF, and the interest earned thereon, will be used to satisfy [the *provider's*] financial obligations to its bondholders, thereby conferring a substantial benefit on the hospital." *Cheshire Hosp.,* 689 F.2d at 1118 (emphasis added).

Similarly, the close relationship of plaintiff and the Foundation ensures that the funds in this case, and the interest earned thereon, will confer a substantial benefit on the hospital. Plaintiff created the Foundation for the express purpose of operating "for the *exclusive* benefit of or in furtherance of the purposes of Forsyth County Hospital Authority, Inc." (Transcript at 483) (emphasis added). Moreover, the Foundation actually performed various nonpatient care related activities for plaintiff such as billing and fund raising. (*Id.* at 9). In addition, the Foundation's Articles of Incorporation provide plaintiff with direct control of eight of the nine positions on its Board of Trustees. (*Id.* at 485). Finally, plaintiff actually exercised such control since both the Foundation's initial governing body and the Board at all times relevant to this proceeding were in fact composed *exclusively* of members of plaintiff's Board of Trustees. *See* (*id.* at 9, 504–13).

In another case, the Seventh Circuit noted that "it is unreasonable to read the offset regulation as applying to income earned by a trust fund to which [the provider] has no effective access." *St. Elizabeth Hosp., Inc. v. Bowen,* 797 F.2d 449, 456 (7th Cir.1986). While agreeing with this statement of law, the Court distinguishes the facts of this case. Unlike St. Elizabeth Hospital, plaintiff *has* effective access to the funds at issue in this case in that it provided for and has exercised almost total control of the Foundation. *See id.* Accordingly, the offset rule was properly applied in this case to reduce plaintiff's reimbursement.

The offset rule serves the following two purposes:

First, it assures that a provider will not borrow money at Medicare's—and the taxpayer's—expense when it has investment funds available which could be applied to fill the need for capital. Second, it guarantees that a provider will borrow only what is needed to fulfill capital requirements related to providing services under the Program....

*Illinois Cent. Community Hosp., Inc. v. Schweiker,* [1981–82 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 31,421, at 9120 (D.D.C. July 10, 1981), *quoted in Cheshire Hosp.,* 689 F.2d at 1118; *Brooklyn Hosp. v. Schweiker,* 596 F.Supp. 326, 330 (E.D.N.Y.1984). In this case, application of the rule serves *both* purposes. Plaintiff's control of the Foundation means that the investment income could be applied to fill its need for capital. Consequently, application of the offset rule ensures that plaintiff will borrow *only* what it *needs* to fulfill capital requirements related to providing services to Medicare beneficiaries.

In summary, the almost absolute and total control of the Foundation by plaintiff authorized the Secretary's action in this case. In addition, the fact that these funds will be distributed to plaintiff along with the Foundation's other assets in the event of liquidation mandates application of the offset rule. Hence, the Secretary properly imputed the investment income to plaintiff and offset it against the claimed expenses under 42 C.F.R. § 405.419 (1982) since it both *potentially* and *actually* confers substantial benefits on the hospital.

## II.

Although the discussion above fully supports the action of the Secretary, the Deputy Administrator also specifically relied on the "related organizations doctrine" in 42 C.F.R. § 405.427 (1982) to justify applying the offset rule to the Foundation's investment income.[2] This regulation specifically states that "a provider [that] obtains services, facilities, or supplies from a related organization ... will be reimbursed only for the cost to that supplier or for the market price, whichever is lower." *V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1023 (11th Cir.1983) (citing 42 C.F.R. § 405.427(c)(2)), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). From this principle, the Deputy

---

**2.** As indicated *supra,* the parties have stipulated that plaintiff and the Foundation are "related organizations" within the meaning of 42 C.F.R. § 405.427 (1982). *See* (Transcript at 257).

Administrator inferred "that the Provider and the related organization are considered the same entity for Medicare reimbursement purposes." (Transcript at 8).

In its brief, plaintiff argues strenuously that the plain language of the regulation above precludes its construction as a more general principle. However, "[t]he classification of 'related entity,' as outlined above, was established to prevent the reimbursement of excessive charges resulting from self-dealing...." *American Hosp. Mgt. Corp. v. Harris*, 638 F.2d 1208, 1213 (9th Cir.1981). In this way, "the regulation also carries out the purpose of the relevant enabling legislation, which is to assure that only reasonable and necessary costs actually incurred are reimbursed." *Id.* (citing 42 U.S.C. § 1395x(v)(1)(A)). Similarly, the Secretary's application of the related organizations principle in this case to offset the investment income of the Foundation against claimed interest expenses of plaintiff carries out the purpose of 42 U.S.C. § 1395x(v)(1)(A). In any event, however, whether the "related organizations doctrine" applies or not, the offsetting by the Secretary of the Foundation's investment income against plaintiff's allowable expenses was proper under 42 C.F.R. § 405.419 (1982).[3]

Plaintiff's argument on this issue focuses on the fact that the related organizations regulation speaks only of *costs* being imputed. Therefore, plaintiff reasons, income can *not* be imputed from a related organization to a provider. However, this reasoning ignores the fact that the related organizations regulation states a *principle* reasonably inferred from 42 U.S.C. § 1395x(v)(1)(A). Hence, both *costs and income* of the Foundation should be imputed to plaintiff if necessary to assure that only reasonable and necessary costs actually incurred are reimbursed.

In this case, plaintiff seeks to have its cake and eat it too. By donating an asset worth over $1,000,000.00, plaintiff ensured that it could borrow more money and seek reimbursement from the government for the interest expense. Moreover, since the recipient happened to be an entity over which it exercised extensive authority and control, plaintiff ensured that the asset would still be used for the purposes *it* chose. Faced with such a situation, the Court must uphold the decision of the Secretary.

The Medicaid and Medicare programs exist to ensure health for the disabled, the elderly, and the poor; they do not exist to provide a windfall for providers. The Medicare Act specifically authorizes reimbursement "of such reasonable cost which the Secretary finds will provide *fair compensation* to such provider for such services...." 42 U.S.C. § 1395f(b)(2) (emphasis added). In this case, offsetting the investment income of the Foundation against plaintiff's claimed interest expenses ensured that the compensation would be "fair" to *both* plaintiff and the government. Consequently, the Secretary's action was both reasonable and proper.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, DENIED, and that Defendant's Cross–Motion for Summary Judgment be, and the same hereby is, GRANTED.

---

**3.** The Court would again emphasize that, although consistent with the Court's construction of the regulations promulgated pursuant to the Medicare Act, the Secretary's argument as to the "related organizations doctrine" is *not* dispositive of the case in light of the discussion *supra*.