**MARYMOUNT HOSPITAL, INC., Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Defendant.**

**Civ. No. 90–2035.**

United States District Court, District of Columbia.

May 5, 1992.

Scott W. Taebel, Bricker & Eckler, Columbus, Ohio, for plaintiff.

Lyn S. Crozier, Office of the General Counsel, Health Care Financing Div., U.S. Dept. of Health & Human Services, for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

The Plaintiff ("the Hospital"), a hospital located in a suburb of Cleveland, Ohio, brings this action against Dr. Louis W. Sullivan, the Secretary of Health and Human Services ("the Secretary"), challenging the amount of reimbursement to which it is entitled under Medicare, 42 U.S.C. § 1395 *et seq.* Both parties have filed motions for summary judgment. An oral hearing on these motions was held on April 3, 1992. Based on the reasoning set forth below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

### Background

The Hospital is sponsored by a Catholic congregation ("the Congregation"). Historically, members of the Congregation served as corporate members of the Hospital, responsible for appointing and removing the Hospital's board of directors. If the Hospital were ever to be dissolved as a corporation, its assets would have reverted to the Congregation. In 1983, a corporate reorganization of the Hospital resulted in the creation of a new corporate entity, Marymount Health Care Systems ("MHCS"). MHCS determines overall planning and strategy for subsidiary organizations, including the Hospital. MHCS is also the parent of the Marymount Home Health Care Service and Clare–Felicia Corporation. The former is a non-profit corporation and the latter is a for-profit corporation operating a medical office building and a pharmacy.

After the reorganization, individual members of the Congregation serve as corporate members of MHCS, with the ability to appoint and remove members of MHCS' board of directors. MHCS serves as the sole corporate member of the Hospital and has the power to appoint and remove the Hospital's board of directors. There is no overlap between members of the boards of directors of MHCS and the Hospital, *i.e.,* no person serves on both boards. Following the reorganization, if the Hospital were to be dissolved as a corporation, its assets would revert, not to the Congregation, but

to MHCS. If MHCS were to be dissolved as a corporation, its assets would revert to the Congregation.

MHCS was initially funded by two contributions from the Hospital: $3 million in 1983 and $1 million in 1984. In 1984, MHCS earned $332,238 in investment income on the contributed funds. In 1985, MHCS similarly earned $351,012.

For the 1984 year, the Hospital's Medicare cost report listed $1,444,181 in allowable interest expense for debt service for buildings and fixtures. Blue Cross, which acts as the fiscal intermediary for the Secretary (by reviewing cost reports, determining costs allowable under the applicable regulations and disbursing the appropriate reimbursements) reduced the Hospital's allowable interest expense by the $332,238 of interest income earned by MHCS in 1984. Similarly, for the 1985 year, Blue Cross reduced the Hospital's claimed interest expense of $1,414,914 by $351,012. As a result of these adjustments, the Hospital's 1984 and 1985 reimbursements were reduced by $141,006 and $152,306, respectively.

The Hospital appealed these adjustments to the appropriate administrative body, the Provider Reimbursement Review Board ("the Board"). The Board affirmed the decisions made by Blue Cross. Plaintiff now brings this action challenging the Board's ruling.

Reimbursement for interest expenses is governed by 42 C.F.R. § 405.419.[1] Section 405.419(b)(1) states that interest expense includes "the cost incurred for funds borrowed for capital purposes, such as acquisition of facilities and equipment, and capital improvements." Interest expense must be "necessary" in order to be reimbursable. Interest expense is deemed necessary if it is incurred on a loan which satisfies the financial need of the provider and is related to patient care. § 405.419(b)(2).

Section 405.419(b)(2)(iii) states that interest expense must "be reduced by investment income." The Board applied that reg-

ulation in this case to reduce the Hospital's allowable interest expense by the investment income of MHCS. The Board found support for its action in a second regulation, 42 C.F.R. § 405.427,[2] which governs "cost to related organizations." Section 405.427(a) states that "costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization."

## Standard of Review

The Administrative Procedure Act ("the APA") sets forth the standard of review used in appeals from decisions by the Board. The Board should be affirmed unless its decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or contrary to law. APA, 5 U.S.C. § 706. The court should review the record as a whole in making its determination as to the appropriateness of the action taken by the Board.

## Arguments

Plaintiff argues that the government, without justification, has ignored the fact that MHCS and the Hospital are separate legal entities. The mere fact that one corporation owns another does not justify disregarding their separate legal identities. There is a strong presumption against ignoring each corporation's distinct legal existence.

The Board, by imputing MHCS' investment income to the Hospital, disregarded MHCS' separate corporate identity. MHCS was established to provide and coordinate various health care services. The Hospital's corporate purpose is more specific: to provide hospital services. The two corporations do not have interlocking directorates. Both corporations have maintained all the formalities of separate corporate existence. MHCS is not controlled by the Hospital; in other words, MHCS is not merely the alter ego of the Hospital. The two corporations

1. This regulation has subsequently been redesignated 42 C.F.R. § 413.153.

2. This regulation has subsequently been redesignated 42 C.F.R. § 413.17.

operate independently, serving distinct functions.

The Board relied heavily on *Forsyth County Hospital Authority, Inc. v. Bowen*, 675 F.Supp. 1002 (M.D.N.C.1987), *aff'd*, 856 F.2d 668 (4th Cir.1988) (*per curiam*), in offsetting MHCS' investment income against the Hospital's interest expense. In that case, the plaintiff hospital donated an apartment complex to a related foundation, which later sold the apartments to a third-party. The foundation invested the proceeds. The court upheld the administrative decision to offset the hospital's interest expense by the amount of investment income earned by the foundation.

First, the offset was based on the fact that the expenses did not need to be incurred, since the hospital had access to the foundation's investment income. The court concluded that the foundation's investment income was available to benefit the hospital. "Plaintiff created the Foundation for the express purpose of operating 'for the *exclusive* benefit of or in furtherance of the purposes of Forsyth County Hospital Authority, Inc.' " *Forsyth*, 675 F.Supp. at 1006 (emphasis in original). The foundation was, in fact, operating for that purpose; it performed various services for the hospital, such as billing and fund raising. In the event of the dissolution of the foundation, all of its assets were to be distributed to the hospital. Since the foundation's sole purpose was to benefit the hospital, the hospital could not prevail in its argument that the foundation's investment income was not available to the hospital. Therefore, it was appropriate to offset the hospital's interest expense by the amount of interest income earned by the foundation.

Plaintiff distinguishes the case at bar from *Forsyth*. It was the Congregation, not the Hospital, that created MHCS. MHCS was formed to provide comprehensive health care services, not to serve the Hospital exclusively. Nor does it serve the Hospital exclusively; it oversees other subsidiary corporations as well. Nor do MHCS' Articles of Incorporation specify that upon dissolution its assets revert to the Hospital; rather, they would revert to the Congregation. Finally, Plaintiff distinguishes *Forsyth* by noting that in that case, the majority of the foundation's board members were members of the hospital's board. Indeed, the foundation's articles of incorporation required this to be the case. By contrast, in 1984 and 1985, no members of MHCS' board served on the Hospital's board.

Plaintiff maintains that the investment income of MHCS was not available to the Hospital. While the income was earned on funds donated to MHCS from the Hospital, those funds were donated without recourse. The investment income can be used in any manner MHCS, not the Hospital, sees fit. Since MHCS does not serve the Hospital exclusively, there is no reason to treat MHCS' investment income as being that of the Hospital. In fact, Plaintiff asserts, none of the funds were used to benefit the Hospital.

The Defendant acknowledges that there are factual distinctions between the case at bar and *Forsyth*. The government rejects, however, Plaintiff's position that *Forsyth* should be confined to its facts. The linchpin of *Forsyth*'s analysis was that the hospital "has effective access to the funds at issue." *Id.* at 1006. The government asserts that the Board was correct in concluding that the close relationship of MHCS and the Hospital ensures that the Hospital has effective access to the funds of MHCS. The government characterizes Plaintiff's position as an attempt to argue, contrary to the facts, that MHCS and the Hospital are not related.

The government highlights several facts that it asserts indicate that the two entities are closely related. The government notes that initially, the Congregation had the authority to appoint and remove Hospital board members and the Congregation was to receive all Hospital assets in the event of dissolution. With the reorganization, MHCS became the overseeing organization of the Hospital, as well as several other entities. Shortly after the creation of MHCS, the Hospital transferred $3 million

to MHCS.[3] The Hospital received nothing in return for these transfers. In the event of the Hospital's dissolution, its assets would now revert to MHCS. Given that MHCS was funded by a contribution from the Hospital and that MHCS controls the Hospital, they are closely related. This relationship leads to the conclusion, the government argues, that the Hospital retained effective control over the funds transferred.

Further, both the Hospital and MHCS operate under the oversight of the Congregation. The government argues that this also leads to the conclusion that the funds contributed by the Hospital to MHCS were at all times available to the Hospital. The Congregation could direct MHCS to return the funds to the Hospital at any time.

Plaintiff argues that the Board was in error in concluding that the Congregation controls both MHCS and the Hospital and concluding, therefore, that investment income of MHCS benefits the Hospital. While members of the Congregation do serve as members of MHCS, they do not have any authority over the manner in which MHCS uses its investment income. That authority is vested in the board of directors and officers of MHCS. Thus, it is not within the power of the Congregation to mandate that MHCS use its investment income to benefit the Hospital.

In addition to distinguishing *Forsyth*, Plaintiff also distinguishes another case relied upon by the Board, *Monongahela Valley Hosp., Inc. v. Bowen*, 728 F.Supp. 1172 (W.D.Pa.1990), *aff'd*, 945 F.2d 576 (3d Cir. 1991). The hospital plaintiff in *Monongahela* was a wholly-owned subsidiary of a parent non-profit entity. The hospital, having determined that it needed some new equipment, transferred funds to the parent corporation. After the parent had made the purchases, the equipment was transferred back to the hospital. The Board offset investment income on the transferred funds against the hospital's interest expense. The district court ruled that the

offset was inappropriate, but only because the transfer amounted to a *de facto* funded depreciation account of the hospital; such accounts are not subject to the offset rule pursuant to 42 C.F.R. § 405.415(e).[4]

Plaintiff notes that in *Monongahela*, the assets transferred by the hospital to the parent corporation were controlled by the hospital even after the transfer. The funds were intended to be used, and ultimately were used, for the sole benefit of the hospital. Plaintiff argues that this puts *Monongahela* squarely within the *Forsyth* requirements for an offset, but illustrates the dissimilarities between both of these cases and the present case.

The *Forsyth* and *Monongahela* courts both read § 405.419, the investment income offset rule, in conjunction with § 405.427, which governs the treatment of related organizations. This latter regulation states that when a provider purchases services or supplies from a related organization, the provider may only be reimbursed at the cost to the related organization. The purpose of the rule is to prevent Medicare from being charged inflated costs due the absence of arms-length transactions. *See Biloxi Regional Medical Center v. Bowen*, 835 F.2d 345, 350 (D.C.Cir.1987). While on its face this regulation would not appear to have any application to investment income, both the *Forsyth* and the *Monongahela* courts hold that the definition of related organizations set forth in § 405.427 should be considered in applying § 405.419. In other words, the investment income of one entity may be used as an offset to the interest expense of another entity when the two organizations are related organizations as defined in § 405.427.

Plaintiff argues that *Forsyth* and *Monongahela* hold that the related organizations regulation is applicable to investment income only where self-dealing created unnecessary interest expense for the provider. The interest expense was unnecessary only if the hospital retained control over

---

3. About one year later, the Hospital transferred another $1 million to MHCS. Thus, a total $4 million was transferred.

4. The Hospital does not contend that the funded depreciation account exception applies in this case.

the transferred funds. As noted above, the Hospital argues that it did not have any control over the funds once transferred to MHCS.

Again, the government argues that the Plaintiff reads the case law too narrowly. Control by the provider over the other entity is not required under § 405.427 in order to find that two entities are related organizations. Section 405.427(b)(1) defines "related" as meaning "that the provider to a significant extent is associated *or* affiliated with *or* has control of *or* is controlled by the organization furnishing the services, facilities or supplies" (emphasis added). "Control" is defined as having the ability to exercise significant influence over the actions of the other organization, either directly or indirectly. 42 C.F.R. § 405.-427(b)(2).

The government argues that the Hospital's contributions to MHCS standing alone would be enough to support a finding that the two entities were related. The contribution of funds does not stand alone, however; it is bolstered by other relevant facts. After the reorganization, the Congregation now controls the Hospital indirectly through MHCS, rather than directly. Just as the Congregation continues to control the Hospital, it also controls MHCS.[5] Thus, the Hospital and MHCS are "associated or affiliated with" one another because they are both controlled by the same entity, the Congregation. Furthermore, MHCS directly controls the Hospital. Thus, the Hospital "has control of *or is controlled by*" MHCS. Therefore, the government argues, the Hospital and MHCS are related organizations pursuant to § 405.427.

In addition to relying on *Forsyth* and *Monongahela*, the government cites *Frankford Hospital v. Bowen*, Medicare and Medicaid Guide (CCH) ¶ 36,672 at 15,-298 (PRRB Oct. 6, 1987), *aff'd*, No. 87–7799 (E.D.Pa. Oct. 28, 1988), *aff'd*, 872 F.2d 412 (3d Cir. March 21, 1989) (attached as exhibits to Defendant's cross-motion for summary judgment). In that case, the provider, following a reorganization, made a contribution to a newly created parent company. The provider argued that since it was a bona fide contribution, there should be no offset of the parent's investment income against the interest expense of the provider. The Board rejected this position and was affirmed by both the district court and the court of appeals. The reason that the provider's position did not prevail was that the Board found that the hospital and its parent were related organizations and that the hospital "never lost effective control of the funds." *Id.* at 15,300.

The government fails to note, however, that the bylaws of the parent in *Frankford* required that a majority of its board members be board members of the provider. Further, the Board found that it was the provider's intent to retain control over the funds transferred. The facts in *Frankford*, like those in *Forsyth* and *Monongahela* can be distinguished from those in this case.

Finally, the Hospital argues that there is no rational basis for treating it differently from similarly situated providers; to do so, therefore, violates the Fifth Amendment. The Hospital argues that the only reason it is being treated differently than the providers in *Forsyth* and *Monongahela* is that the Hospital is sponsored by a religious organization. Secular hospitals have no such sponsoring organization. The presence of the sponsoring institution in no way affects whether the provider unnecessarily borrows funds. Therefore, it is not rational to treat providers with sponsoring institutions differently from those providers that do not have sponsoring institutions.

---

5. The Hospital disagrees with the government's characterization of the Congregation as having control over MHCS. The Congregation, as an entity, is not a member of MHCS. (MHCS, as an entity, is a member of the Hospital.) Rather, the Congregation selects individual members of the Congregation to be members of MHCS. (Likewise, before the reorganization, individual members of the Congregation were members of the Hospital.) There is no evidence that the Congregation controls the actions of the individual Sisters serving as members of MHCS. Thus, Plaintiff argues, the Congregation does not control MHCS. It should be noted, however, that the § 405.427 speaks explicitly in terms of indirect, as well as direct, control.

The government argues that there has been no unconstitutional discrimination in this case. The government contends that it has treated the Plaintiff in exactly the same manner in which it treated the providers in *Forsyth* and in *Monongahela.* In each case, based on its finding that the provider had effective access to the funds of a related organization, it offset the investment income of the related organization against the interest expense of the provider. The Plaintiff was not entitled to special protection simply because it is a religious institution. Religious organizations are not exempt from a "valid and neutral law of general applicability." *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876 (1990).

Plaintiff, of course, distinguishes this case from *Forsyth* and *Monongahela.* Since the Hospital, unlike the providers in those cases, does not control the related organizations, here, the government applies the offset rule merely because of the religious affiliation between the Hospital and MHCS through the Congregation. Plaintiff argues that the offset rule cannot be applied solely due to religious affiliation without violating the Constitution.

The government, on the other hand, cites the following passage from *Monongahela* as a summary of the controlling law:

> If a parent or a sister corporation earns interest on invested funds which would otherwise be available to the provider, while the provider must borrow funds and incur interest expense, the Medicare program should not be charged for the expense without offsetting the earnings.

*Monongahela,* 728 F.Supp. at 1177. Such a conclusion is compelled by "reading the Regulations in concert with common sense and an understanding of Medicare's purpose of reimbursing 'necessary' costs." *Id.*

The government argues that the common thread of each of the cases cited is not control by the provider of the related entity, but the provider's access to the transferred funds. *Forsyth,* for example, did not hold that the hospital must control the related organization in order for an offset

to be proper; rather, an offset is appropriate where the hospital "has effective access to the funds at issue." *Forsyth,* 675 F.Supp. at 1006.

Since, via their shared parent, the Hospital could access MHCS' funds, *Forsyth's* reasoning would apply in the present case. The Congregation exercises management control over both MHCS and the Hospital. It has the power, through the trustees it selects, to move funds between the two entities. The Hospital, therefore, has effective access to MHCS' funds.

The Hospital's argument that the government is ignoring the separate corporate existence of the Hospital and MHCS cannot control the outcome of this case. Under the Medicare statutory scheme, Medicare principles, and not those drawn from other areas of the law, govern. *See, e.g., Richey Manor, Inc. v. Schweiker,* 684 F.2d 130, 134 (D.C.Cir.1982). The government acknowledges that under state corporate law, the Hospital and MHCS are separate corporate entities. This is irrelevant, however, because under Medicare regulations, the salient fact is the relationship between the two corporate entities.

In this case, the Hospital has transferred funds to MHCS to use for non-reimbursable expenses, *e.g.,* expansion of a for-profit medical office building. As a result, these funds are not available to reduce the Hospital's interest expense. If Medicare were to reimburse the Hospital's resultant inflated interest expense, effectively, Medicare would be supporting the non-reimbursable items such as the office building. It is just such a result that the requirement that interest expenses be necessary and the related organizations rule are meant to prevent.

Plaintiff argues that the government is too quick to disregard corporate law. While corporate law does not necessarily control Medicare law, a court should not presume that Congress, via the Medicare statutory scheme, has meant to disregard corporate law. Compelling evidence of an intended departure from corporate law must be advanced to overcome the presumption that the basic principles of corpo-

rate law should be adhered to. *See, e.g., Homan & Crimen, Inc. v. Harris*, 626 F.2d 1201, 1208 (5th Cir.1980) (*cited* in *Richey Manor*). Plaintiff contends that the government has not demonstrated that Congress intended for the Secretary to ignore the separate legal existence of two entities simply because they are related.

Plaintiff also argues that the government reads the case law too broadly. The government seems to be arguing that where two entities are related, however tenuously, the investment income of one is to be used as an offset to the interest expense of another. Under this reasoning, the Plaintiff asserts, it would be appropriate for the government to offset that investment income of the Vatican against the Hospital's interest expense, since, via the Congregation, the Hospital is related to the Vatican.

While the Hospital admits that it is related to MHCS, the Hospital argues that merely being related is not sufficient. There must be some evidence that the provider exercises control over the related entity, which demonstrates that the funds in question will be used to benefit the provider. Since the Hospital does not control either MHCS' or the Vatican's assets, there is no reason to believe that the assets of either will be used to benefit the Hospital. Accordingly, the investment income from those assets should not be used to offset the Hospital's interest expense.

The Alleged Constitutional Violation

The Court finds it unnecessary to address the constitutional argument raised by the Plaintiff. There have been no allegations that the Medicare statutes or regulations themselves are unconstitutional, *i.e.,* that the statutes or the regulations were promulgated with the intent to discriminate against religiously affiliated hospitals. Thus, the only possible constitutional violation would be in the manner in which the Secretary has implemented the statutory and regulatory scheme. The constitutional argument is really just another way of characterizing the argument that the Secretary's action was arbitrary and capricious. If the Secretary had a legitimate basis un-

der the Medicare statute and the prior case law to apply the offset rule in this case, then there has been no constitutional violation. In that case, the Secretary would be merely applying a statutory scheme of general applicability in a neutral fashion. If, on the hand, the Secretary's action in this case were arbitrary and capricious, there would be no need to address the alleged constitutional violation since there would be a statutory violation.

The Board's Income Offset Decision

■ The Board in reviewing the regulations, and the case law interpreting those regulations, determined that it was appropriate to offset the investment income of MHCS against the investment income of the Hospital. The Court does not find that the Board's action was arbitrary and capricious.

■ The case law cited makes clear that the regulatory scheme does not require the Board to determine how to apply the income offset rule, § 405.419, in a vacuum. It can do so by reading it in conjunction with the related organizations regulation, § 405.427. Though § 405.427 may not be "strictly applicable" to the operation of the income offset rule, it is the only regulation addressing related organizations. *Monongahela*, 728 F.Supp. at 1177. Section 405.-427 delineates those circumstances where an organization is related to the provider by common ownership or control. § 405.-427(a).

Plaintiff's argument seems to be twofold. First, it argues that MHCS is not related to it by common ownership and control as defined in § 405.427; and secondly, that even if the terms of § 405.427 are met, this does not necessarily mean that application of the income offset rule is appropriate.

The Court finds that MHCS is related to the Hospital. MHCS is the sole corporate member of the Hospital; in other words, the Hospital is a wholly-owned subsidiary of MHCS. MHCS has the power to appoint and remove the members of the board of directors of the Hospital, provides oversight to the Hospital, and helps establish

the Hospital's long-term goals and general philosophy. Accordingly, MHCS is "related to the provider" in that it "to a significant extent is associated with or affiliated with or has control of or is controlled by" the Hospital. § 405.427(b)(1).

Plaintiff appears to concede that the Hospital and MHCS are related. The remaining issue pursuant to § 405.427, then, is whether they are related by either common ownership or control. The Court finds both common ownership and control.

MHCS has control over the Hospital. "Control exists if an individual or an organization has the power, directly and indirectly, significantly to influence or direct the actions or policies of an organization or institution." § 405.427(b)(3). The ability of MHCS to appoint and remove the Hospital's directors in and of itself demonstrates its control over the Hospital.

There is also common ownership. "Common ownership exists if an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider." § 405.427(b)(2). Individual members of the Congregation serve as the corporate members of MHCS. While it is true that Congregation itself is not a corporate member of MHCS, it is, to a significant extent, the "owner" of MHCS. Should MHCS be dissolved, MHCS' assets revert to the Congregation itself, not to any of its individual members. Thus, the Congregation has significant equity in MHCS. Further, MHCS' activities are indirectly governed by the Congregation. Individual members of the Congregation serve as corporate members of MHCS. MHCS' Articles of Incorporation call for it to operate in a manner "consistent with the philosophy and objectives of the [Congregation]." Administrative Record at 1040.

MHCS "owns" the Hospital, its subsidiary. Since the Congregation "owns" MHCS, it also, indirectly, "owns" the Hospital. Thus, the Congregation possesses significant ownership or equity in both MHCS and the Hospital. MHCS and the Hospital are related by common ownership

then, as well as by MHCS' control over the Hospital.

Finding that the terms of § 405.427, defining related parties, have been met, the Court needs to address the Plaintiff's second contention: even though MHCS is related to the Hospital, an offset is not appropriate in this case. Plaintiff reads the cases cited as turning on the presence of enough control exercised by the provider over the related entity to ensure that the funds will in fact be used to benefit the provider.

The Court does find that in each of the cases cited—*Forsyth, Monongahela,* and *Frankford*—the provider did exercise greater control over its related entity than the Hospital has over MHCS. Further, in each of those cases it would appear that the funds would in fact ultimately be used to benefit the providers. The Court does not read any of these cases, however, as requiring that the provider control the related organization, nor as requiring any showing that the funds will actually be used to benefit the provider.

Since the Court does not find these requirements either in the regulations or in the cases interpreting the regulations, the Plaintiff cannot prevail unless the Board was arbitrary and capricious in not creating such a requirement. "It is hornbook law that the regulatory interpretation of a statute by the agency charged with administering it must be given great deference. An agency's construction of its own regulations has been regarded as especially due that respect." *Monongahela,* 945 F.2d at 591 (citations omitted). The Court finds that the Board was well within its discretion to apply the income offset rule of § 405.419 to related organizations within the ambit of § 405.427.

This is not a case where the Board has decided to offset the investment income of the Vatican. It is not at all clear that the Vatican is related to the Hospital by common ownership or control. Reading the income offset rule in conjunction with the requirements of § 405.427 prevents the application of the offset rule to organizations that are only tangentially related, which is

the concern raised by the Plaintiff. The most tenuously related organizations do not have common ownership or control.

The Court can, therefore, agree with the Plaintiff's position that mere relationship does not justify an investment income offset without accepting the Plaintiff's ultimate conclusion that there must be control of the related organization by the provider, above and beyond those elements of control specified in § 405.427, in order to apply the income offset rule. Here, there is control of the provider by MHCS. It is not irrational to offset MHCS' investment income on that basis alone. The regulations do not provide that the control must operate both ways or that the two organizations must be alter egos of each other before the income of one can be offset against the interest expense of the other.

The Hospital transferred the funds to MHCS without receiving compensation. This indicates that the Hospital believed that it would ultimately receive some benefit, tangible or intangible. In fact, the motivation of the Hospital was the same as the motivation of its parent, MHCS: to provide health care to the community consistent with the goals and philosophies of the Congregation.

It is perfectly appropriate for the Hospital to use some of its funds for items other than the care of its patients, if doing so is consistent with its own goals or the goals of a related entity. This does not mean, however, that the Hospital is entitled to Medicare reimbursement for the investment income it forgoes if it chooses to do so. One purpose of the income offset rule is to prevent Medicare from indirectly reimbursing activities not related to patient care.

A second purpose of the income offset rule is to prevent reimbursement of unnecessary expenditures. After the transfer of the funds to MHCS, the Hospital continued

to have access to those funds. Thus, the interest expense incurred by the Hospital because these funds were now held by MHCS did not need to be incurred. At any time, the Congregation could have had the funds returned to the Hospital, which could have invested them and thereby reduced its interest expense. While the Congregation did not have direct day-to-day management authority over MHCS' investment decisions, the Congregation did not lack the ability to return the funds to the Hospital. The Congregation could have done so by expressing to MHCS that it was inconsistent with the Congregation's goals not to have the funds transferred back. Further, it could have, via its members who serve as corporate members of MHCS, replaced MHCS directors who were unwilling to transfer the funds back. Finally, it could have dissolved MHCS and returned the funds to the Hospital. Since the funds could have been transferred back to the Hospital, the additional interest expense need not have been incurred by the Hospital.[6]

The Board, therefore, could reasonably conclude that the additional interest expense was incurred unnecessarily and was not an expense incurred in order to provide patient care. The Plaintiff's argument that the investment income offset rule should not be applied when the provider does not control the related organization is not without merit. However, the Court does not need to weigh the merits of the Plaintiff's arguments against the merits which the Court has found in the counter-argument that the income offset rule should be applied when the terms of § 405.427 are met and the related organization controls the provider. The determination of how stringently to apply the income offset rule, given two alternatives both of which have merit, is an administrative decision, not one for this Court. The Court concludes that in

---

**6.** Of course, had the Hospital not contributed the funds to MHCS in the first place, the Hospital would have continued to have had the funds itself to invest. Since it was not necessary to contribute the funds in order for the Hospital to provide care to its patients, the increased interest expense to the Hospital that resulted from its contribution to MHCS was unnecessary. This would be true even if MHCS and the Hospital were wholly unrelated. As discussed above, Medicare should not be required indirectly to reimburse expenses incurred for purposes unrelated to patient care.

this case, the Board did not act in an arbitrary and capricious manner in deciding that the intermediary's decision was proper.

Accordingly, by an Order accompanying this Opinion, the Court will grant the Defendant's motion for summary judgment against the Plaintiff and deny the Plaintiff's motion for summary judgment against the Defendant.