**MARYMOUNT HOSPITAL, INC., Appellant,**

v.

**Donna E. SHALALA, Secretary, HHS.**

**No. 92–5242.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1993.

Decided March 29, 1994.

Scott W. Taebel, Columbus, OH, argued the cause, and filed the briefs, for appellant.

Lyn S. Crozier, Atty., U.S. Dept. of Health & Human Services ("HHS"), Washington, DC, argued the cause, for appellee. With her on the brief, was J. Ramsey Johnson,

U.S. Atty., Washington, DC, at the time the brief was filed. Thomas W. Coons, Atty., HHS, and Stuart Gerson and John D. Bates, Asst. U.S. Attys., Washington, DC, entered appearances.

Before BUCKLEY and RANDOLPH, Circuit Judges, and LEVIN H. CAMPBELL,* Senior Circuit Judge for the First Circuit.

Opinion for the court filed by Senior Circuit Judge LEVIN H. CAMPBELL.

LEVIN H. CAMPBELL, Senior Circuit Judge:

Plaintiff-appellant Marymount Hospital Inc. ("Marymount") brought this action in the United States District Court for the District of Columbia pursuant to 42 U.S.C.A. § 1395oo(f) (West 1992), which provides for judicial review of final administrative decisions concerning disputed claims for Medicare reimbursement. Marymount challenged the amounts it received in 1984 and 1985 as reimbursement for services provided to Medicare beneficiaries, claiming that the reimbursement amounts were erroneously adjusted downward. Both Marymount and defendant Secretary of Health and Human Services ("the Secretary" or "HHS") filed cross-motions for summary judgment. The district court denied Marymount's motion and allowed that of the Secretary. *See Marymount Hosp., Inc. v. Sullivan,* 791 F.Supp. 878 (D.D.C.1992). Marymount appealed, and we affirm.

I.

Marymount is a non-profit, 279–bed acute care facility located in Garfield Heights, Ohio. Marymount is affiliated with the Catholic Church and is sponsored by the Congregation of the Sisters of St. Joseph of the Third Congregation of St. Francis ("the Congregation"). Historically, selected members of the Congregation served as the corporate members of Marymount, responsible for appointing and removing the hospital's board of trustees. If Marymount were ever to be

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

dissolved as a corporation, its assets would have reverted to the Congregation.

In 1983, Marymount's board of trustees and the Congregation approved a strategic plan calling for a reorganization. A new corporate entity, Marymount Health Care Systems ("MHCS"), was established. As Marymount's sole corporate member, MHCS became Marymount's parent corporation. Certain Sisters of the Congregation served as the corporate members of MHCS. MHCS determined overall planning and strategy for Marymount and had the power to appoint and remove Marymount's board of directors and to approve long-term loans and the alienation of its property. MHCS also became the parent corporation of a non-profit entity created to provide home nursing services, and of a for-profit organization operating an office building and pharmacy on Marymount's grounds. Following the reorganization, if Marymount were to be dissolved as a corporation, its assets would revert to MHCS rather than to the Congregation.

Marymount made two contributions from its operating funds to MHCS for start-up capital: $3 million in 1983 and $1 million in 1984 ("the contributed funds"). MHCS placed a portion of these funds in interest-bearing accounts, and during 1984 and 1985 earned a total of over $680,000 in investment income on the contributed funds. Meanwhile, during the same two years, Marymount incurred almost $3 million in interest *expense,* servicing debt arising from the issue of revenue bonds in 1979.

Marymount is a participating provider of medical services in the Medicare program, 42 U.S.C.A. §§ 1395–1395ccc (West 1992 & Supp.1993), which provides health insurance for the aged and disabled. The Medicare program reimburses hospitals and other medical providers participating in the program for the "reasonable cost" of medical services provided to eligible beneficiaries. 42 U.S.C.A. § 1395f(b)(1). "Reasonable cost" means "the cost actually incurred, excluding therefrom any part of incurred cost found to

be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations [promulgated by the Secretary of HHS]." 42 U.S.C.A. § 1395x(v)(1)(A).

The regulations promulgated by the Secretary take into account both "direct and indirect costs." 42 C.F.R. § 413.9 (1992).[1] Providers are, therefore, reimbursed for interest expense on "both current and capital indebtedness" if the expense is "necessary and proper." 42 C.F.R. § 413.153(a)(1). For interest to be "necessary," it must result from a loan that satisfies a "financial need" of the provider related to patient care. 42 C.F.R. § 413.153(b)(2)(i)–(ii). Moreover, "[l]oans that result in excess funds or investments would not be considered necessary." 42 C.F.R. § 413.153(b)(2)(i). Thus, for purposes of figuring the provider's proper medicare reimbursement, interest expense must be offset, or "[r]educed," by interest income earned on investments. 42 C.F.R. § 413.-153(b)(2)(iii). The regulations thereby limit a provider's reimbursement for interest expense to the net cost of borrowing. *See Monongahela Valley Hosp., Inc. v. Sullivan,* 945 F.2d 576, 580–82, 591 (3d Cir.1991) (describing statutory and regulatory framework).

Pursuant to these regulations, Marymount filed annual cost reports in both 1984 and 1985, listing its costs of delivering medical services to Medicare beneficiaries. In each year's report, it listed as allowable interest expense its debt service on the 1979 bond issue. These reports were filed with a fiscal intermediary for HHS, in this case Blue Cross and Blue Shield Association/Community Mutual Insurance Company ("Blue Cross"), which processed Marymount's reimbursement claims.

For both 1984 and 1985, Blue Cross determined that the approximately $680,000 of investment income earned in those years by MHCS on the contributed funds should be counted against the interest expense claimed by Marymount. Consequently, Blue Cross offset Marymount's reimbursable costs, re-

---

1. The regulations relevant to this appeal were redesignated in 1986. For the older designations, *see* Redesignation Table II, 42 C.F.R. §§ 400–429 (1992), at 659. All citations here are to the newer codification.

sulting in a reduction in Marymount's actual reimbursement of approximately $290,000 over two years.

Marymount appealed from these downward adjustments to the appropriate administrative body, the Provider Reimbursement Board ("the Board"). The Board affirmed the decisions made by Blue Cross. Marymount then instituted this action in the district court. The district court upheld the decision of the Board.

## II.

Primarily at issue is the Board's—and ultimately, the Secretary's—application of the reimbursement regulations so as to impute to Marymount the investment income earned by assets Marymount had turned over to its parent corporation, MHCS. We review the Board's decision without deference to the district court's determination. *Biloxi Regional Medical Center v. Bowen,* 835 F.2d 345, 349 (D.C.Cir.1987).

■ The Board's decision, in contrast, is entitled to considerable deference from a reviewing court. The Medicare Act, 42 U.S.C.A. § 1395oo(f)(1), directs courts to review the Board's decision under the deferential standard of the Administrative Procedure Act ("the APA"). 5 U.S.C.A. §§ 701–706 (West 1977 & Supp.1993). *See St. Elizabeth Community Hosp. v. Heckler,* 745 F.2d 587, 591 (9th Cir.1984). Under the APA, a reviewing court may set aside the Board's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or unsupported by substantial evidence in the administrative record. 5 U.S.C.A. § 706(2)(A), (E); *Sentara–Hampton Gen. Hosp. v. Sullivan,* 980 F.2d 749, 755 (D.C.Cir.1992).

In making these determinations, "[d]eference is accorded the Secretary's interpretation of [her] own regulations where [she] has expertise in the substantive area involved and where the regulations were promulgated pursuant to congressional authorization." *St. Elizabeth's,* 745 F.2d at 592. Also, when the regulations "form[ ] part of a complex statutory scheme which the agency is charged with administering, the arguments for defer-

ence to administrative expertise are at their strongest." *Psychiatric Inst. of Washington, D.C., Inc. v. Schweiker,* 669 F.2d 812, 813–14 (D.C.Cir.1981). Thus, we must uphold HHS's interpretation of its own regulations so long as the interpretation "is within the range of reasonable meanings that the words of the regulation admit." *Id.* at 814. We are " 'not to substitute [our] judgment for that of [HHS].' " *Sentara–Hampton,* 980 F.2d ᷾at 755, quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

■ In addition, to the extent HHS has based its decision on the language of the Medicare Act itself, we owe deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). When an agency has interpreted a statute it administers and when "Congress has not directly addressed the precise question at issue," a court does not "impose" its own construction. *Id.* at 843–44, 104 S.Ct. at 2781–83. Rather, when the statute is silent or ambiguous with respect to the specific issue, the question "is whether the agency's answer is based on a permissible construction of the statute." *Id.*

With these principles in mind, we turn to the Board's ruling.

## III.

Marymount argues that the applicable regulations do not allow the investment income of one corporation, MHCS, to offset the otherwise allowable interest expense of a separate corporation, Marymount. Marymount asserts that the text of the Secretary's regulation, 42 C.F.R. § 413.153(b)(2)(iii) ("the interest offset rule"), which requires interest expense to be offset by investment income, applies only to the *provider's* interest income, as it says nothing about the income of the provider's parent or other affiliates. Marymount points out that the same regulation expressly prohibits a provider from being reimbursed for interest *expense* associated with loans made between "related" organizations. 42 C.F.R. §§ 413.153(b)(3)(ii); 413.-

153(c). Hence the silence as to interest *income* of related organizations is, in Marymount's view, purposeful.

The Secretary acknowledges that the interest offset regulation does not, in so many words, refer to interest income from assets transferred to a parent organization. But she argues that, especially in the context of her other rules and the governing statute, it is only sensible to apply the regulation in these circumstances. She focuses, in particular, on Congress's command that Medicare not reimburse "any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C.A. § 1395x(v)(1)(A). This statutory directive is the basis of the Secretary's own regulation that, in order to be reimbursed, interest expense must be "necessary," *i.e.*, incurred on a loan made to satisfy a "financial need" of the provider. 42 C.F.R. §§ 413.153(a)(1); 413(b)(2)(i). In the present situation, the Secretary insists that Marymount's voluntary decision to give to MHCS funds that Marymount might have retained clearly makes some of the interest expense for its own borrowing "unnecessary" under the statute. As the district court noted, had Marymount not contributed the funds to MHCS, it would have continued to have had the funds to invest. *See Marymount Hosp.,* 791 F.Supp. at 887 n. 6.

■ The Secretary bolsters her argument by reference to the so-called "related organizations rule." 42 C.F.R. § 413.17. This regulation provides that "costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere." 42 C.F.R. § 413.17(a). The purpose of this regulation is to prevent providers from inflating their reimbursable costs by engaging in self-dealing with their affiliates. *Forsyth County Hosp. Auth., Inc. v. Bowen,* 675 F.Supp. 1002, 1007 (M.D.N.C.1987), *aff'd,* 856 F.2d 668 (4th Cir.1988).

The Secretary concedes that the latter regulation, speaking as it does to costs rather than income, is not "strictly applicable" to the issue of whether to offset Marymount's reimbursement by the investment income of a related entity. Nevertheless, the Secretary argues that the related organizations rule establishes a principle that should be used to define what are "necessary" costs for the purpose of the interest offset rule. As in the cost context, self-dealing between related entities with regard to interest-earning assets can inappropriately inflate the reimbursable interest expense of the provider. The Secretary argues that under Marymount's view of the regulations, providers could increase their reimbursements simply by transferring interest-earning assets to a parent or related entity. This, according to the Secretary, would be inconsistent with the Medicare Act's requirement that any cost "unnecessary in the efficient delivery of needed health services" not be reimbursed. 42 U.S.C.A. § 1395x(v)(1)(A).

■ We cannot say the Secretary's interpretation of her regulations is unreasonable on the facts presented here. Certainly, Marymount is "related" to MHCS. Marymount is a wholly-owned subsidiary of MHCS, and MHCS directs Marymount's long-term policy and has the power to appoint and to remove Marymount board members. Marymount is therefore "to a significant extent [ ] associated or affiliated with or has control of or is controlled by" MHCS. 42 C.F.R. § 413.17(b)(1). Additionally, as the Board found on the basis of substantial evidence, both MHCS and Marymount are in fact controlled by the Congregation, as the Congregation "has the power, directly or indirectly, significantly to influence or direct the actions or policies" of both organizations. 42 C.F.R. § 413.17(b)(3). Although the related organizations rule may not be "strictly applicable" to the income offset rule, it was hardly unreasonable for the Board to consider the related organizations rule as identifying a principle that could help determine whether Marymount's interest expense was

"reasonable," 42 U.S.C.A. § 1395f(b)(1), and "necessary." 42 C.F.R. § 413.153(b)(2)(i)–(ii).

 The Board, citing *Forsyth,* identified two purposes of the interest offset rule: (1) it assures that a provider will not borrow money at Medicare's expense when it has investment funds available; and (2) it guarantees that a provider will borrow no more than is needed to fulfill capital needs related to patient care. *Forsyth County Hosp. Auth.,* 675 F.Supp. at 1006. In this case, the Board found on substantial evidence that because of the close relatedness of Marymount, MHCS, and the Congregation, the contributed funds were available to all the entities. Without the appropriate offset, Medicare would be paying for interest that, measured against the purposes of the Secretary's interest offset rule, was not a reasonable or necessary cost.

### IV.

 Marymount makes two additional arguments, neither of which is persuasive. First, Marymount contends that the Board's extension of the interest offset rule to investment income of MHCS constitutes a "legislative rule" and thus should have been promulgated in accordance with the notice and comment procedures of the APA rather than developed in adjudication. As the Secretary points out, however, Marymount failed both in the district court and before the Board to raise this argument. Arguments not made below are deemed waived, and, absent "exceptional circumstances" not present here, "it is not our practice to entertain issues first raised on appeal." *Roosevelt v. E.I. Du Pont de Nemours & Co.,* 958 F.2d 416, 419 & n. 5 (D.C.Cir.1992).

 Second, Marymount contends that by focusing on the role of the Congregation as common owner of MHCS and Marymount, the Board unconstitutionally discriminated against Marymount on the basis of its religious affiliation. We see no indication whatever that this is so. The Secretary has used the related organizations rule to interpret the interest offset rule in cases dealing with providers both with and without religious sponsors. *See, e.g., Monongahela,* 945 F.2d at 591 (interest offset rule applied to hospital without religious sponsor); *Forsyth County Hosp. Auth.,* 856 F.2d at 670 (same). Nothing suggests that the Board singled out Marymount because of its religious affiliation. The interest offset rule is generally applicable, and, insofar as appears, the Board treated Marymount the same as it would treat a non-religious hospital. Marymount's constitutional claim is, therefore, without merit. *See Church of the Lukumi Babalu Aye v. City of Hialeah,* —— U.S. ——, ——, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993) (noting the "general proposition" in Free Exercise jurisprudence "that a law that is neutral and of general applicability need not be justified by a compelling interest even if the law has the incidental effect of burdening a particular religious practice").

### V.

We conclude that the Board's decision to offset Marymount's interest expense by the amount of MHCS's interest income from the contributed funds was not arbitrary, capricious, an abuse of discretion, or otherwise unlawful.

*Affirmed.*