H. Jay SPIEGEL, Plaintiff,

v.

Bruce BABBIT, et al., Defendants.

Civ. A. No. 94–0728.

United States District Court,
District of Columbia.

May 27, 1994.

Order Denying Motion
to Vacate July 1, 1994.

H. Jay Spiegel, pro se.

Robert Lawrence Shapiro, U.S. Atty's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Before this Court are Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion for Summary Judgment. Based on the record and oral argument, the Defendants' Motion for Summary Judgment will be granted and the Plaintiff's Motion for a Preliminary Injunction will be denied.

### I. The Facts

Defendants maintain a park area along the Potomac riverfront in the District of Columbia called Georgetown Waterfront Park, part of which includes the Washington Harbour. Georgetown Waterfront Park is part of the C & O Canal National Historic Park, which is administered by the National Park Service and the United States Department of the Interior.

In 1985, several private owners and the United States government entered into a Deed of Easements which provided the National Park Service with a degree of control over a certain part of the Washington Harbour, including a fixed and floating wood dock which was to be constructed and maintained by two of the private owners. The parties to the Deed of Easements recognized that "the National Park Service has the responsibility for law enforcement and responsibility for regulating and controlling activi-

ties in said areas," including the fixed and floating wood dock. Deed of Easements, para. 18. According to the Deed, the easement area would "be kept open to the public at all times" and the area would not "be used for short term recreational, exhibit activities, seasonal restaurant use or commercial uses." *Id.* at para. 2.

At least as early as 1987, the fixed and floating wood dock was completed, along with the rest of the Washington Harbour Complex. Members of the public, including Plaintiff, began to moor their vessels at the Washington Harbour dock periodically and avail themselves of the use of the dock and the adjacent public access easement. According to Plaintiff, no rules or regulations were posted in 1987 concerning the use of the dock and the adjacent public access easement.

In 1991, signs were posted limiting mooring to two hours between the hours of midnight and 6 a.m. Prior to the adoption of this limitation, a small number of vessels had been staying at the dock through the night on Fridays and Saturdays in warmer weather with their occupants sleeping onboard. Since 1991, Plaintiff and several other private boat owners who have attempted to moor their boats overnight at Washington Harbour have been ticketed or have been required to unmoor their boats during the night.

In 1992, the National Park Service designated a 100 foot section of the Washington Harbour dock for use exclusively by boats with commercial licenses to pick up and discharge passengers. Plaintiff, who desires to sleep overnight in his boat while moored at Washington Harbour, seeks a preliminary injunction enjoining the Park Service from enforcing the limited mooring rules.

## II. *Positions of the Parties*

The plaintiff makes three arguments. First, he asserts that the National Park Service's limitation on overnight mooring at Washington Harbour was established in violation of the Park Service's own regulations, 36 C.F.R. §§ 1.5(b) and 1.5(c). According to Plaintiff, the Park Service failed both to prepare the requisite written justification for the limitation and to propose the limitation in the

Federal Register. Second, Plaintiff claims that the Park Service's designation of 100 feet of the dock exclusively for the use of commercial use licensees violates the Deed of Easements. Last, Plaintiff alleges that the National Park Service has "violated the letter and spirit of the Deed of Easements by failing to strictly enforce all of the restrictions set forth in the Deed of Easements ...," which are allegedly too numerous to mention.

Defendants respond that the Park Service had, in fact, prepared the written justification contemplated by 36 C.F.R. § 1.5(c), and submit that the Federal Register notice contemplated by § 1.5(b) is not applicable to the limitation at issue. Second, Defendants contest Plaintiff's standing to challenge the Park Service's designation of a section of the dock for vessels with commercial licenses, and assert that Plaintiff has not joined parties necessary for the just adjudication of his challenge. And finally, Defendants allege that Plaintiff's third claim fails to comport with Rule 8(a) of the Federal Rules of Civil Procedure.

## III. *Analysis and Decision*

The Court finds no merit to Plaintiff's claims concerning the National Park Service's regulations. Pursuant to 36 C.F.R. § 1.5(c), the National Park Service must prepare a written determination justifying any non-emergency park restriction, condition, public use limit or closure. Contrary to Plaintiff's assertion, such a written determination *was* prepared to justify the overnight docking restriction at Washington Harbour. The Superintendent of the C & O Canal National Historic Park, Thomas C. Hobbs, prepared a written determination explaining that such a limitation is necessary for several reasons, including "the maintenance of public health and safety, protection of environmental or scenic values, [and] protection of natural or cultural resources...." Mr. Hobbs' justification explains that "[t]he Georgetown Waterfront Park was never intended nor was it ever designated ... to be used for overnight accommodations." The Court finds that this written determination satisfies the requirement of 36 C.F.R. § 1.5(c).

■ Plaintiff is also incorrect in his assertion that the National Park Service should have published the docking limitation in the Federal Register for notice and comment because it "is of a nature, magnitude and duration that will result in a significant alteration in the public use pattern of the park area." *See* 36 C.F.R. § 1.5(b). By Plaintiff's own admission, only a small number of boat owners moor overnight, doing so only occasionally during a few summer months. This Court is hard pressed to view this limited docking restriction as a "significant alteration" in the public use pattern of the park.

■ The National Park Service has interpreted 36 C.F.R. § 1.5(b) as not requiring Federal Register publication of the notice at issue here. The Park Service's interpretation of its own regulation is entitled to deference from this Court. *Marymount Hospital, Inc. v. Shalala,* 19 F.3d 658 (D.C.Cir.1994); *Chevron, U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In a letter to the Plaintiff, the Assistant Solicitor of the National Capital Parks, Richard Robbins, explained that the Park Service does "not believe that [its] limited docking restriction constitutes a 'significant alteration in the public use pattern of the park area' warranting publication in the Federal Register...." *See* Exhibit 3 of Defendants' Motion to Dismiss. Such an interpretation is consistent with the Park Service's analysis which accompanied the publication of 36 C.F.R. § 1.5:

> A permanent closure of a limited area within a park does not require the use of notice and comment procedures, unless it also has the effect of significantly altering or disrupting use by a substantial number of park visitors.... Public notice and comment is not intended to apply to measures taken to achieve routine resource management objectives, such as construction, facility maintenance or rehabilitation, and routine .practices which are aimed at preserving the viability, integrity and natural character of the park ecosystem.

48 Fed.Reg. 30,252, 30,261–30,262 (June 30, 1983). Accordingly, Plaintiff's arguments regarding the Park Service's regulations are without merit.

■ Next, Plaintiff's contention that the Park Service has violated the Deed of Easements by allowing commercial tour boats to pick up and drop off passengers at the Washington Harbour dock is in error. Paragraph 2 of the Deed of Easements prohibits "commercial uses" of the easement area, and Paragraph 18 provides "that the National Park Service shall not conduct nor permit commercial activities in such areas." Allowing passengers to embark and disembark from boats is not a commercial activity. The Deed of Easements speaks to the activity, not the entity conducting the activity.

The notion that docking rights at the Washington Harbour are effectively closed to all members of the public except those wealthy enough or lucky enough to own or sail on a private boat is unconscionable. That passengers pay for the right to ride on the tour boats is irrelevant to whether they, as members of the public, have the right to use the dock at Washington Harbour. Of course the National Park Service can allow large passenger boats to moor briefly at the Washington Harbour dock to allow their passengers to embark and disembark and enjoy the park's benefits.

Pursuant to its authority to regulate and control activities in the easement area (*see* Deed of Easements, para. 18), the Park Service has the authority to set aside a certain portion of the dock for the exclusive use of the commercial passenger boats, benefitting the public at large. Such regulation maximizes the safety, order, and enjoyment of the greatest number of park visitors who arrive by water.

■ The Plaintiff's last claim in his complaint fails because of its vagueness:

> The Park Service has violated the letter and spirit of the Deed of Easements by failing to strictly enforce all of the restrictions set forth in the Deed of Easements concerning the public access easements which are under the jurisdiction of the National Park Service. These violations are too numerous to mention specifically.

This claim does not comport with Rule 8 of the Federal Rules of Civil Procedure. It does not give the defendant "fair notice of

what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

For all of the above reasons, Plaintiff's Motion for a Preliminary Injunction will be denied and Defendants' Motion for Summary Judgment will be granted. An appropriate order accompanies this memorandum.

### ORDER

Upon consideration of Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion for Summary Judgment, all opposition thereto, oral arguments, and for the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that Plaintiff's Motion for a Preliminary Injunction is hereby denied, and further

ORDERED that Defendants' Motion for Summary Judgment is hereby granted, and further

ORDERED that this action be dismissed.

### MEMORANDUM OPINION AND ORDER ON MOTION TO VACATE

Before this Court is Plaintiff's Motion to Vacate Order Granting Defendants' Motion for Summary Judgement and Further Request for Preliminary Injunctive Relief, and Defendants' response thereto. Based on the record, the Plaintiff's motion will be denied.

While Plaintiff alleges several "material errors in fact and law which have affected the correctness of the Decision," this Court finds none of his arguments persuasive. Only one issue merits comment by the Court at this time. In both his Motion for Preliminary Injunction and his most recent motion, Plaintiff argues that the Park Service violated the Deed of Easements at issue in the case by allowing commercial tour boats to pick up and drop off passengers at the Washington Harbor dock. Paragraph 2 of the Deed of Easements prohibits "commercial uses" of the easement area, and Paragraph 18 provides "that the National Park Service shall not conduct nor permit commercial activities in such areas." In its recent decision, this Court ruled that allowing passengers to embark and disembark does not constitute commercial activity.

In his most recent motion, Plaintiff cites for the first time *United States v. Carter*, 339 F.Supp. 1394 (D.Ariz.1972). While at first glance, the facts in *Carter* may resemble those in the instant case, such resemblance is only superficial. In *Carter*, the defendant rented boats to the public outside of the national park, towed them through the national park, and launched them from the national park's launch, for use in water that was considered part of the national park. *Id.* at 1396 ("Both the land and water area of Glen Canyon National Recreation Area are part of the 'national park system.' ") In other words, the land, launch, and water of the national park were necessary prerequisites that formed the backstay of the defendant's business. Each boat rental by defendant required him to enter and perform services in the national park (e.g. towing, launching).

In the instant case, commercial boats have obtained licenses to dock briefly at Washington Harbour to pick up and discharge passengers. The tour boats at issue pull up to the water entrance of Washington Harbour; they do not enter or cross the national park area. Unlike *Carter*, the tour boat operators participate in *no* activity in the national park area itself. Nevertheless, Plaintiff argues that *Carter* applies because the passengers of the boat operators must cross the national park to board the boats. Such an argument is untenable. If the Court followed such reasoning, taxis and tour busses would also be precluded from picking up or dropping off paying passengers at entrances to national parks. The embarkment and disembarkment of paying passengers at park entrances do not constitute commercial activity within a park.

Accordingly, Plaintiff's Motion to Vacate is denied. An appropriate order accompanies this memorandum.

### ORDER

Upon consideration of Plaintiff's Motion to Vacate Order Granting Defendant's Motion

for Summary Judgment and Further Request for Preliminary Injunctive Relief, Defendants' response thereto, and for the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that Plaintiff's Motion to Vacate Order Granting Defendant's Motion for Summary Judgment and Further Request for Preliminary Injunctive Relief is hereby denied.