**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STORMONT-VAIL REGIONAL
MEDICAL CENTER,

      Plaintiff - Appellant,

v.

KATHLEEN SEBELIUS, Secretary of
Health and Human Services,

      Defendant - Appellee.

No. 10-3123
(D.C. No. 5:08-CV-04065-JAR-JPO)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

      This is an appeal from the district court's order affirming the Provider

Reimbursement Review Board's ("PRRB") determination that it lacked

jurisdiction over Plaintiff-Appellant Stormont-Vail Regional Medical Center's

("Stormont-Vail") appeal from the decision of a fiscal intermediary regarding

Medicare reimbursement. In relevant part, the district court held that Stormont-

Vail conceded that the PRRB decision was correct. We have jurisdiction under

---

     [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

28 U.S.C. § 1291, and we affirm.

Background

A.    Medicare Reimbursement Scheme.

It goes without saying that this country's healthcare system, particularly Medicaid and Medicare, are immensely complicated. The district court provided a comprehensive overview of the Medicare reimbursement system, and we need not repeat it here. See Stormont-Vail Reg'l Med. Ctr. v. Sebelius, 708 F. Supp. 2d 1178, 1180-82 (D. Kan. 2010). Suffice it to say that the federal government reimburses hospitals that provide care to patients covered by Medicare. The reimbursement rates are subject to certain adjustments. At issue in this case is the Disproportionate Share Hospital adjustment (the "DSH adjustment")[1], an adjustment for hospitals that provide care to a disproportionate number of low-income patients. Aplt. Br. 4; 42 U.S.C. § 1395ww(d)(5)(F). The DSH adjustment is determined in part by a factor referred to as the Medicaid Fraction.

---

[1]The parties make extensive use of acronyms. Below is a summary of acronyms used throughout this order and judgment.

| | |
|---|---|
| APA | Administrative Procedures Act |
| DHHS | Department of Human Health and Services |
| DSH Adjustment | Disproportionate Share Hospital Adjustment |
| EBUDs | Eligible but Unpaid Days |
| FI | Fiscal Intermediary |
| NPR | Notice of Program Reimbursement |
| PRRB | Provider Reimbursement Review Board |

See Stormont-Vail, 708 F. Supp. 2d at 1180.  The Medicaid Fraction is the number of hospital patient days provided to patients who are eligible for Medicaid—but not Medicare—benefits under a state-run Medicaid program, divided by the total number of hospital patient days.  See id. at 1181 (citing 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)).

During the relevant time period, the Kansas Medicaid program did not pay hospitals for Medicaid-eligible patients if those patients' hospital stays were fully paid from another source, such as a vehicle insurance policy.  See id. at 1182.  In other words, hospitals in Kansas did not receive Medicaid payments for all Medicaid-eligible patient days.  We refer to these patient days as "eligible-but-unpaid days," or "EBUDs."

Prior to 1997, federal regulations excluded EBUDs from the DSH adjustment.  Aplt. Br. 9 (citing Fiscal Year 1986 Changes to the Inpatient Hospital Prospective Payment System, 51 Fed. Reg. 16,772, 16,777 (May 6, 1986)).  However, that changed in 1997 when the Administrator of the Health Care Financing Administration[2] issued a ruling ("Ruling 97-2") that required the DSH—specifically, the Medicaid Fraction—to include all Medicaid-eligible patient days, regardless of whether the hospital received payment from another source.  See II Aplt. App. 497-98.  In other words, Ruling 97-2 required the DSH

---

[2] In 2001, the Health Care Financing Administration became the Center for Medicare and Medicaid Services.  See Aplee. Br. 5 (citing Statement of Organization, 66 Fed. Reg. 35437-03 (July 5, 2001)).

adjustment to include EBUDs.

A hospital's reimbursement, including the DSH adjustment, is determined by a fiscal intermediary ("FI"), acting as the agent of the Secretary of the Department of Human Health and Services ("DHHS").  See Stormont-Vail, 708 F. Supp. 2d at 1181.  A hospital can appeal the FI's final reimbursement decision, referred to as the Notice of Program Reimbursement ("NPR"), to the PRRB.  Id. The PRRB has jurisdiction over an appeal if, *inter alia*, the hospital "is dissatisfied with a final determination of the organization serving as its fiscal intermediary . . . ."  42 U.S.C. § 1395oo(a); see Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 403-04 (1988).  During the time period at issue in this case, a hospital could add new issues to a pending, jurisdictionally proper appeal at any time prior to the PRRB hearing.  See 42 C.F.R. § 405.1841(a)(1) (2000) ("Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof.")

If the Secretary of the DHHS takes no action, a PRRB decision becomes final within sixty days, after which hospitals can petition a federal district court to review the PRRB's decision under the standards of the Administrative Procedures Act ("APA").  See 42 U.S.C. § 1395oo(f)(1); see Little Co. of Mary Hosp. v. Sebelius, 587 F.3d 849, 853 (7th Cir. 2009), Marymount Hosp., Inc. v. Shalala, 19 F.3d 658, 661 (D.C. Cir. 1994).

B.     Factual Background.

This case arises from Stormont-Vail's DSH adjustment for the 1994 fiscal year. The DSH adjustment in the original NPR did not include EBUDs. II Aplt. App. 519; see Aplt. Br. 17, Aplee. Br. 7. In January 1997, Stormont-Vail appealed to the PRRB, seeking, *inter alia*, inclusion of EBUDs in the 1994 DSH adjustment. II Aplt. App. 514-15, 517. After the appeal was filed, but before the PRRB hearing, the Secretary issued Ruling 97-2.

In response to Ruling 97-2, the FI sent Stormont-Vail a letter that stated,

The above referenced [appeal] has been approved for a Partial Administrative Resolution concerning the issue of Medicaid eligible days as defined in HCFA Ruling No. 97-2.

Please advise the PRRB Board that you have agreed to this partial administrative resolution and are dropping this portion of your facility's appeal issue.

II Aplt. App. 476.

Pursuant to this partial administrative resolution, the FI included 14,959 EBUDs in Stormont's 1994 DSH adjustment. It issued a revised NPR to that effect on June 10, 1998. II Aplt. App. 479; see Stormont-Vail, 708 F. Supp. 2d at 1183. Stormont-Vail did not appeal the revised NPR.

On June 16, 2000, Stormont-Vail sought to add two new issues to its appeal from the original 1994 NPR, which was still pending. II Aplt. App. 506. Stormont-Vail contended that (1) the FI failed to include all EBUDs in the DSH adjustment, and (2) the FI failed to include "general assistance" days in the DSH

adjustment. Id.; see Aplt. Br. 5 n.2, 18 n.8. Stormont-Vail represents in its appellate brief that, after it added these two new issues to the appeal, it sought information from Kansas ("Matching Data") regarding potential new EBUDs. Aplt. Br. 18-19. However, Stormont-Vail does not indicate whether or when the State of Kansas provided the Matching Data.

In March 2008, the PRRB held that it did not have jurisdiction over the new issues because Stormont-Vail was not dissatisfied with the FI's decision. See II Aplt. App. 465-68. Specifically, the PRRB held that Stormont-Vail was not dissatisfied because, pursuant to the partial administrative resolution, it had received all the relief it sought, namely inclusion of EBUDs in the DSH adjustment.[3] Id. at 466-67. In other words, the PRRB held that the supposedly "new" EBUDs issue was actually settled in the partial administrative resolution. According to the PRRB, because Stormont-Vail had received the relief it requested, it could not have been dissatisfied with the FI's decision, and the PRRB therefore did not have jurisdiction over the issue. Id.

Stormont-Vail filed a complaint for judicial review of the PRRB's decision. See I Aplt. App. 7. The district court held that the PRRB erred in with regard to the general assistance days issue. See Stormont-Vail, 708 F. Supp. 2d at 1186. The district court further held that Stormont-Vail, in the course of its argument

---

[3] The PRRB also held that the general assistance days issue was included in the partial administrative resolution. See II Aplt. App. at 466. That issue is not presented on appeal.

regarding the general assistance days, had conceded that the new EBUDs issue fell within the partial administrative resolution. Id. at 1190. According to the court, given this concession, the PRRB correctly determined that it did not have jurisdiction over that issue. Id. The district court's disposition concerning the new EBUDs issue rested entirely upon Stormont-Vail's concessions. See id.

Stormont-Vail timely appealed. See II Aplt. App. 393.

Discussion

When faced with an appeal from the district court's disposition of a party's petition for review of an agency decision, we "afford no particular deference to the district court's review of the agency's action; our review of the administrative record pertaining to the challenged action is independent." Cherokee Nation of Okla. v. Norton, 389 F.3d 1074, 1078 (10th Cir. 2004) (internal quotation marks and citations omitted); see Marymount Hosp., 19 F.3d at 661 ("We review the [Provider Reimbursement] Board's decision without deference to the district court's determination." (citation omitted)). However, as we made clear in Berna v. Chater, 101 F.3d 631, 632 (10th Cir. 1996), an appeal from the district court's affirmance of an agency decision, "[t]he scope of our review . . . is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." We explained,

This court has on a number of recent occasions recognized that

waiver principles developed in other litigation contexts are equally applicable to social security cases. Thus, waiver may result from the disability claimant's failure to (1) raise issues before the magistrate judge, <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996), (2) object adequately to the magistrate judge's recommendation, <u>Soliz v. Chater</u>, 82 F.3d 373, 375-76 (10th Cir. 1996), (3) preserve issues in the district court as a general matter, <u>Crow v. Shalala</u>, 40 F.3d 323, 324 (10th Cir. 1994), or (4) present issues properly to this court, <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389-90 (10th Cir. 1994).

<u>Id.</u> at 632-33 (quoting <u>James v. Chater</u>, 96 F.3d 1341, 1344 (10th Cir. 1996) (brackets and quotation marks omitted)). We further pointed out that "<u>Marshall</u>, <u>Soliz</u>, and <u>Crow</u> all impose waiver consequences for procedural omissions in the district court, illustrating that the administrative origin of a social security appeal does not negate the legal effect of interim proceedings conducted in district court." <u>Id.</u> at 634.

In this case, the district court was presented with two issues: (1) whether the PRRB erred in determining that it did not have jurisdiction over the "general assistance days" issue that Stormont-Vail attempted to add to its initial appeal, and (2) whether the PRRB erred in determining that it did not have jurisdiction over the "new EBUDs" issue. <u>See</u> I Aplt. App. 24; <u>Stormont-Vail</u>, 708 F. Supp. 2d at 1183; Aplt. Br. 5 n.3. Stormont-Vail appeals only the district court's decision on the second issue.

As we noted *supra*, the sole rationale for the court's disposition of the second issue was Stormont-Vail's apparent concession in its pleadings before the district court. <u>See</u> <u>Stormont-Vail</u>, 708 F. Supp. 2d at 1190.

On appeal, the majority of Stormont-Vail's arguments address the merits of the PRRB decision. See Aplt. Br. 20-24. Specifically, Stormont-Vail argues that the PRRB erred in determining that the partial administrative resolution encompassed the new EBUDs issue because (1) the partial resolution did not constitute a binding settlement agreement, Aplt. Br. 28; (2) the partial resolution did not release any claims, id. at 29; (3) the PRRB's decision was inconsistent with its treatment of the same issue in 1995, id. at 31; (4) it had the right to add new issues to its pending appeal, so long as the prior appeal was proper, id. at 37-38; and (5) the PRRB's decision frustrated the national policy of including all EBUDs in the DSH adjustment, id. at 45.

Stormont-Vail's opening brief does contain a section specifically challenging the district courts' decision. See id. at 47. However, Stormont-Vail does not so much as mention the district court's holding that it had conceded the new EBUDs issue. See id. at 47-49. Most importantly, Stormont-Vail does not argue that the district court erred in holding that it had conceded the issue below, and it does not attempt to explain how the language quoted by the district court did not constitute a binding concession. See id.

In contrast, the Secretary's brief specifically notes that the district court decided the new EBUDs issue solely on concession grounds, and argues that Stormont-Vail failed to challenge this holding on appeal. Aplee. Br. 12-14, 18-19. Yet, in its reply brief Stormont-Vail does not even acknowledge, much less

address, the Secretary's arguments on this point.

In sum, Stormont-Vail fails to challenge the district court's holding regarding the very issue it seeks to appeal. The district court held that Stormont-Vail had conceded the new EBUDs issue, and Stormont-Vail does not argue that the court erred in so holding. Nor could it do so. Although Stormont-Vail initially challenged in district court the PRRB's decision on the ground it argues to us, it effectively withdrew that challenged when it conceded the PRRB correctly decided it lacked jurisdiction because the issue had been previously settled. Having thereby failed to preserve its scope-of-the-settlement argument in the district court, Stormont-Vail cannot now contest the scope of the settlement on appeal to us. See Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court." (citation omitted)). Accordingly, Stormont-Vail has waived any argument that the PRRB erred when it decided it lacked jurisdiction over the Medicare reimbursement issue. Under these circumstances, we cannot provide appellate relief.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 10 -